UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL MASLOW,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF ATLANTIC CITY and JOHN MOONEY,<br><br>          Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-3618 (JEI)<br><br><br>**OPINION** |

**APPEARANCES:**

O'BRIEN, BELLAND & BUSHINSKY, LLC
By:  Mark E. Belland
Jeffrey Robert Caccese
1526 Haddonfield-Berlin Road
Cherry Hill, NJ 08003
          Counsel for Plaintiff

DECOTIIS, FITZPATRICK, COLE & WISLER, LLP
By:  Steven C. Mannion
Glenpointe Centre West
500 Frank W. Burr Boulevard
Suite 31
Teaneck, NJ 07666
          Counsel for Defendant City of Atlantic City

LEVINE STALLER SKLAR CHAN BROWN & DONNELLY PA
By:  David John Azotea
3030 Atlantic Avenue
Atlantic City, NJ 08401
          Counsel for Defendant John Mooney


**IRENAS**, Senior District Judge:

This matter comes before the Court on Defendant Mooney's

Motion for Summary Judgment.[1]  For the reasons set forth below,

---

[1] The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

1

the Motion will be granted.[2]

## I.

Plaintiff Paul Maslow has been a police officer with Atlantic City since 1988. (Mooney's L.Civ.R. 56.1(a) Statement at ¶ 1)[3]  Due to an injury, Plaintiff took sick leave for five and half months, and remained out of work until May 2007. (*Id.* at ¶ 9)  Upon returning to work, Plaintiff was assigned to the midnight to eight a.m. shift. (*Id.* at ¶ 11)  Prior to taking sick leave, Plaintiff worked the four p.m. to midnight shift. (*Id.* at ¶ 10)

Plaintiff had trouble adjusting to the new schedule. (*Id.* at ¶ 12)  After four days of work, Plaintiff used two weeks of sick time, and subsequently applied for extended sick leave based on a sleep disorder, anxiety and stress. (*Id.*)  In May 2007, Plaintiff met with a psychiatrist at the recommendation of Dave Davidson, Police Benevolent Association Union ("PBA") President. (*Id.* at ¶¶ 20-21)  The psychiatrist issued Plaintiff a sick certificate due to stress. (*Id.* at ¶ 21)

Despite his psychiatric problems, Plaintiff attended a PBA meeting on May 30, 2007. (*Id.* at ¶ 22)  There, he encountered

---

[2] This Court recently granted partial summary judgment in favor of Defendant City of Atlantic City. *See Maslow v. City of Atlantic City*, 2011 WL 2607160 (2011).

[3] This citation refers to the parties' obligation to write statements of material facts not in dispute for summary judgment motions pursuant to Local Civil Rule 56.1(a).

Lt. James Pasquale and told him that he was missing work because of stress. (*Id.*)  Upon hearing this news, Lt. Pasquale advised Plaintiff that the police department would need to take back his city issued firearm. (*Id.* at ¶ 23)  Plaintiff cooperated with this request. (*Id.*)  Lt. Pasquale further inquired whether Plaintiff wished to voluntarily relinquish his personally owned firearms pursuant to the police department's unwritten policy regarding officers on sick leave. (*Id.* at ¶ 24)  To this request, however, Plaintiff refused. (*Id.*)

After learning of this situation, Defendant Chief of Police Mooney became involved in two distinct professional capacities. First, Defendant Mooney was the chief of police and Plaintiff's supervisor. (*Id.* at ¶ 2)  In this role, Defendant Mooney had a duty to ensure that his employees did not pose a threat to the public or themselves. *See* N.J.S.A. 40A:14-118.  Plaintiff's sick leave did not strip Plaintiff of his status as a police officer or Defendant Mooney's status as Plaintiff's superior officer.

Indeed, police officers have significant responsibilities both on and off duty.  While off duty, police officers are expected to respond to law violations and are at a greater risk of personal attack due to the nature of their employment.  In recognition of these risks, the police department encourages off duty officers to carry personal firearms. (*See* Tr. of Oral Arg.,

3

Sept. 22, 2011)[4]  These risks and responsibilities create accompanying supervisory responsibilities for superior officers.

Defendant Mooney's second role was through his statutory firearms licensing authority for the municipality of Atlantic City.  *See* N.J.S.A. 2C:58-3 to 4.  Defendant Mooney was in charge of approving applications for firearms and handgun purchaser identification cards, handgun carry permits and instituting permit revocation proceedings in New Jersey Superior Court.  *Id.* Although Plaintiff was exempt from obtaining a handgun carry permit due to his position as a police officer, Plaintiff still possessed a firearms purchaser identification card.[5]  *See* N.J.S.A. 2C:39-6a(7)(a); N.J.A.C. 13:54-2.2.

In connection with these two distinct responsibilities, Defendant Mooney contacted Deputy City Solicitor Anthony Swan to discuss requiring Plaintiff to relinquish his personal firearms. (Mooney's L.Civ.R. 56.1(a) Statement at ¶¶ 26-28)  Swan informed Defendant Mooney that they could institute revocation proceedings in Superior Court pursuant to Defendant Mooney's statutory firearms licensing authority.  (*Id.* at ¶ 28)  However, Defendant Mooney wished to avoid this administrative burden and decided to

---

[4] Atlantic City apparently revoked a regulation requiring police officers to carry a weapon while off duty because of issues relating to possible claims for compensation by off duty officers who did so.  (*Id.*)

[5] The firearms purchaser identification card allowed Plaintiff to purchase ammunition and long guns.  *See* N.J.S.A. 2C:58-3.3b.

act in his supervisory capacity.  (*Id.* at ¶¶ 29-30)  Defendant

Mooney directed Swan to contact Plaintiff's attorney, Tom

Reynolds, to request that Plaintiff voluntarily relinquish his

personal firearms.  (*Id.*)  Swan further advised Reynolds that

should Plaintiff refuse this request, Swan would file an action

in New Jersey State Superior Court to revoke Defendant Mooney's

"ability to carry."[6]  (Swan Dep., Br. in Opp., Ex. E, 22)

    At this point, the parties' accounts diverge.  Defendant

Mooney asserts that Plaintiff, through Reynolds, offered to

relinquish his personal firearms upon a formal written request.

(Mooney's L.Civ.R. 56.1(a) Statement at ¶ 34)  Defendant Mooney

issued the requested order, and on June 1, 2007, Plaintiff

relinquished his personal firearms voluntarily.  (*Id.* at ¶ 35)

    However, Plaintiff maintains that he steadfastly refused to

relinquish his personal firearms unless Defendant Mooney issued

an explicit written order.  (Br. in Opp. at 10)  Upon receiving

the written order, Plaintiff complied only to avoid punishment

for disobeying a direct order.  (*Id.* at 9-10)  In either account,

Defendant Mooney was exercising his supervisory authority, as

opposed to his firearms licensing authority.

    In accordance with the written order, two sergeants from the

---

[6] Whether this revocation proceeding would be successful is uncertain. Average citizens must keep, and renew every two years, a handgun carry permit to "carry, hold or possess a handgun."  N.J.A.C. 13:54-2.2, 2.9.  However, police officers are exempt from this requirement.  *See* N.J.S.A. 2C:39-6a(7)(a); N.J.A.C. 13:54-2.2.  Therefore, it is unclear what permit the Superior Court would have revoked.

Atlantic City Police Department drove to Plaintiff's home to take possession of Plaintiff's personal firearms and his firearms purchaser identification card.  (Mooney's L.Civ.R. 56.1(a) Statement at ¶ 42)  Plaintiff did not fight this order or otherwise demand a hearing.  (*Id.* at ¶¶ 43-44)  Nor did Plaintiff file a grievance or otherwise pursue any remedies before bringing this lawsuit.  (*Id.*)  After this conflict regarding Plaintiff's personal firearms, Plaintiff and Defendant Mooney's relationship was strained.  As a result, Plaintiff alleges that Defendant Mooney twice refused him the prestigious post of motorcycle training officer.  (*Id.* at ¶ 48)

As of oral argument held on September 22, 2011, Defendant Mooney had reinstated Plaintiff as an active police officer and had returned Plaintiff's firearms and firearms purchaser identification card.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  In deciding a motion for summary judgment, the Court

must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'– that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

Plaintiff filed the Complaint in this Court on July 18, 2008. On March 11, 2011, Defendant Mooney filed the present Motion for Summary Judgment. Plaintiff alleges three distinct claims in the Complaint. In his two federal claims, Plaintiff asserts a § 1983 violation based on alleged infringements of the Second Amendment and Due Process Clause of the Fourteenth Amendment.[7] Plaintiff's third claim alleges a violation of the

---

[7] Plaintiff also brings two identical claims directly pursuant to the United States Constitution. Section 1983 creates a statutory right of action for violations of the United States Constitution. Therefore, the Court will consider these duplicate claims together.

7

New Jersey Law Against Discrimination ("LAD") for discrimination and harassment based on a perceived disability.  N.J.S.A. 10:5-1 *et seq.*  In addition, Defendant Mooney moves for attorney's fees pursuant to 42 U.S.C. § 1988.

## A.

As a preliminary matter, Defendant argues that Plaintiff's § 1983 claims are barred by the Eleventh Amendment.  The Eleventh Amendment bars suits against a state or state official sued in his or her official capacity.  *See Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).  Suits against a state official in his or her official capacity represent "only another way of pleading an action against an entity which an officer is an agent."  *Id.* at 25.

Here, Defendant Mooney is a municipal officer, not a state officer.  Suits against municipal officers in their official capacity only implicate judgments against the municipality, not the state.[8]  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 670 n.54 (1978).  Therefore, the Eleventh Amendment, which protects the states against suits for money damages in federal

---

[8] Furthermore, it is well-settled that claims may proceed against officials in their personal capacities.  *Hafer,* 502 U.S. at 25-26.  By construing Plaintiff's ambiguous Complaint to sue Defendant Mooney in both his personal and official capacity, the Eleventh Amendment would not bar this suit even if Defendant Mooney were a state official.  *See Clayton v. City of Atlantic City*, 722 F.Supp.2d 581, 589 n.10 (D.N.J. 2010).

courts, does not apply to municipalities and municipal officials.
*Id.*

## B.

Plaintiff's second claim asserts a § 1983 violation based on Defendant Mooney's alleged deprivation of Plaintiff's Second Amendment rights.  The Second Amendment reads in full: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  This claim is novel insofar as Second Amendment rights, as defined by *District of Columbia v. Heller*, 554 U.S. 570 (2008)*,* were not conclusively incorporated by the Fourteenth Amendment, and thus applicable to the states, until the recent Supreme Court opinion, *McDonald v. City of Chicago,* 13 S. Ct. 3020 (2010).

Defendant Mooney argues that in 2007, when Plaintiff relinquished his personal firearms, the Supreme Court had not yet issued *McDonald*.  (Def.'s Br. in Supp. Sum. J. at 23-25)  Therefore, the alleged violation of Plaintiff's Second Amendment rights did not give rise to a § 1983 cause of action because no such rights yet existed.  Defendant Mooney further argues that the Second Amendment does not provide protection against laws prohibiting the "possession of firearms by felons and the mentally ill."  *Heller*, 554 U.S. at 626.  Plaintiff, by his own

admission, had a mental disability.

In response, Plaintiff argues that the Supreme Court was merely interpreting the Constitution, and the right has been enshrined since the adoption of the Second Amendment. *McDonald*, 130 S.Ct. 3020, 3077 ("[T]he ratifying public understood the Privileges and Immunities Clause to protect constitutionally enumerated rights, including the right to keep and bear arms."). In support of this argument, Plaintiff cites to *U.S. v. Huet*, 2010 WL 4853847 (W.D.Pa. 2010). There, a criminal defendant made an "as applied" challenge to a statute that banned aiding and abetting the possession of an illegal firearm on Second Amendment grounds. *Id.* at *12. The Court ruled that the statute, as applied to the defendant, would violate the Second Amendment despite the Defendant having been arrested before *McDonald* was decided. *Id.*

These arguments presuppose that the Second Amendment applies to this case. The Second Amendment generally has been used to challenge statutes criminalizing the possession of firearms by a class of people. *See generally Heller*, 554 U.S. 570 (striking down a Washington D.C. statute that criminalized handgun ownership in one's own home); *Huet*, 2010 WL 4853847. This Court has found no case that permitted a § 1983 claim based on an alleged violation of the Second Amendment against a particular individual.

Here, there was no statute that barred Plaintiff from owning or possessing a handgun.  In fact, New Jersey and federal law allow police officers to more easily carry personal handguns by exempting them from the normal licensing processes.  N.J.S.A. 2C:39-6a(7)(a); N.J.A.C. 13:54-2 *et seq.*; *see also* 18 U.S.C. § 926(B).  These special privileges are in recognition of the vital role that police officers assume.  Indeed, the law recognizes a police officer's right to employ force, and even deadly force, when the circumstances so warrant.  *See, e.g., Tennessee v. Garner*, 471 U.S. 1, 16-20 (1985); *Scott v. Harris*, 550 U.S. 372, 383-85 (2007).  However, with such an ease of access to firearms, and the right to employ force, the police department is under a concomitant obligation to monitor their officers, especially those with psychological issues that may pose a threat to themselves or the public.[9]

To fulfill this obligation, Defendant Mooney had two options to disarm Plaintiff - one for each of his distinct professional roles.  First, Defendant Mooney could have instituted a proceeding to revoke Plaintiff's firearms purchaser identification card in New Jersey Superior Court pursuant to his

---

[9] Indeed, a police department might be sued if it did not disarm police officers with known mental disabilities who later injured someone with a firearm attained by virtue of their privileged status as a police officer.

11

statutory firearms licensing authority.[10]  *See* N.J.S.A. 2C:58-3f. Revocation of the card is permissible when it "would not be in the interest of the public health, safety or welfare."  N.J.S.A. 2C:58-3c(5).  Second, Mooney, in his supervisory capacity, could have issued an order for Plaintiff to relinquish his personal firearms and firearms purchaser identification card.  *See* N.J.S.A. 40A:14-118.

If Mooney had chosen to seek revocation of Plaintiff's firearms purchaser identification card, Plaintiff would have received a hearing in New Jersey Superior Court and could have appealed an adverse decision.  *See* N.J.S.A. 2C:58-3f.

In fact, Mooney opted to act in his supervisory capacity by issuing an order directing Maslow to surrender his personal weapons.  Plaintiff could have responded to Mooney's written order either by obeying it or refusing to comply.  If Plaintiff acquiesced to the order, as happened in this case, he waived any challenge to which he otherwise would have been entitled.

However, if Plaintiff refused to comply with the order, Mooney could choose to either withdraw the order or impose some sanction based on Plaintiff's refusal to obey.  If he chose to impose a sanction, Maslow would have been entitled to a hearing at which he could have challenged the discipline imposed and

---

[10] This option may have been less desirable because Plaintiff would not necessarily have been forced to relinquish the firearms he had previously purchased.

could have appealed any adverse decision.  *See* N.J.S.A. 40A:14-147 *et seq.*; *cf. Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972) (holding that before being deprived of a protected interest there must have been an opportunity to be heard.)  If successful, any discipline imposed on Plaintiff would have been reversed and Plaintiff made whole.  *See* N.J.S.A. 40A:14-149.2.

In these circumstances, where a superior officer orders an inferior officer to temporarily relinquish his personal firearms during the pendency of a mental disability, and the inferior officer does not challenge that order, there is no Second Amendment violation.  Accordingly, Defendant Mooney's Motion for Summary Judgment with respect to the § 1983 claim based on an alleged Second Amendment violation will be granted.

## C.

Plaintiff's final § 1983 claim is for an alleged deprivation of his Due Process rights for "forcing Plaintiff to surrender his personal firearm without the benefit of a hearing."[11]  (Compl. at ¶ 30)

When a plaintiff sues under § 1983 alleging a state actor's failure to provide procedural due process, there is a two-part

---

[11] For the purposes of this analysis, and making all inferences in the light most favorable to the non-moving party, the Court assumes that Defendant Mooney required Plaintiff to involuntarily relinquish his personal firearms.

analysis: "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal quotations omitted).  This analysis requires a plaintiff to have "taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Id.*

Here, there can be little doubt that personal firearms fit within the meaning of property. *See Parratt v. Taylor*, 451 U.S. 527, 537-37 (1981) (holding that a prisoner's personal hobby kit was protected property under the Due Process Clause of the Fourteenth Amendment).  However, Maslow was not being asked to permanently surrender his ownership rights in his personal handguns.  He was asked only to cede temporary possession while still a police officer and while he was on leave for a mental disability.  When his disability ceased and he was restored to duty, his weapons were returned to him.  Whether Maslow's constitutionally protected rights were violated by this temporary loss of possession is surely at least debatable.

However, even if we assume that such a limited interest is constitutionally protected, Plaintiff would have had the right to demand a pre-deprivation hearing if Mooney had tried to

14

discipline Plaintiff for disobeying the order.  *See* N.J.S.A. 40A:14-147 *et seq.*  Instead, Maslow obeyed the order, which effectively waived his right to a hearing.  *See Roth*, 408 U.S. 564, 573.[12]  Accordingly, Defendant Mooney's Motion for Summary Judgment with respect to the § 1983 claim based on an alleged violation of the Due Process Clause will be granted.

## D.

Assuming *arguendo* that Plaintiff could establish a viable claim under either the Second Amendment or Due Process Clause, the claims would also fail on qualified immunity grounds.[13] Qualified immunity entails a two-part inquiry.  First, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation."  *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  Second, defendants may nevertheless "be shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 739.  In the Third

---

[12] In *Roth*, an assistant professor fought his dismissal all the way up to the Supreme Court.  Had the professor in *Roth* simply accepted his dismissal without a fight as Plaintiff did, he would have had no claim.

[13] Although Defendant Mooney never specifically mentions qualified immunity in his brief, his arguments are clearly steeped in qualified immunity doctrine.  (*See* Def's Br. in Supp. Sum. J. at Point IV.A. (discussing whether Second Amendment rights were clearly established.))  Furthermore, Defendant Mooney raises qualified immunity as an affirmative defense in his Answer. (Dkt. No. 9)

Circuit, the Court need not perform the inquiries in order. *See Beckinger v. Township of Elizabeth*, 2011 WL 2559446, *3-4 (3d Cir. 2011).

With respect to whether there was a clearly established Second Amendment right, the answer must be no. The Supreme Court had not yet decided either *Heller* or *McDonald*. Moreover, there was no established law suggesting a Second Amendment violation when a superior officer acted to disarm a subordinate officer he perceived to have a psychological issue. Indeed, Mooney had a duty to act to protect the public from possible harm by a subordinate clothed with the powers possessed by a police officer. This unwritten policy of disarming police officers with mental disabilities had been followed several times before without incident. (*See* Tr. Oral Arg., Sept. 22, 2011) As such, Plaintiff did not have a clearly established Second Amendment or Due Process right. Accordingly, Plaintiff's § 1983 claims based on an alleged Second Amendment and Due Process violation are barred on the additional grounds of Defendant Mooney's qualified immunity.

## E.

Plaintiff's final claim alleges discrimination based on a perceived and actual disability in violation of the LAD.[14]

---

[14] There is no dispute that Plaintiff's psychiatric condition qualifies as a disability for the purposes of the LAD.

N.J.S.A. 10:5-1 *et seq.*  For the purposes of the LAD, supervisors are treated differently than employers.  *See Cicchetti v. Morris County Sheriff's Office*, 194 N.J. 563, 594 (2008) ("individual liability of a supervisor for acts of discrimination or for creating or maintaining a hostile environment can only arise through the aiding and abetting mechanism that applies to any person.") (internal quotations omitted);[15] *see also* N.J.S.A. 10:5-12(e).  To establish aiding and abetting liability, the plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation."  *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004).

In turn, there are five factors relevant to determine whether a defendant provided substantial assistance to the principal violator.  *Id.*  "The factors are: (1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor."  *Id.*

---

[15] "[T]he plain meaning of the definition of employer in the LAD does not include a supervisor."  *Id.*

17

Paramount to this analysis is the existence of both a principal violator and the alleged aider and abetter.  An "alleged principal wrongdoer, cannot aid and abet his own wrongful conduct."  *Newsome v. Administrative Office of the Courts*, 103 F.Supp.2d 807, 823 (D.N.J.2000); *accord Putterman v. Weight Watchers Intern., Inc.*, 2010 WL 3310706, *1 (D.N.J. 2010); *Swingle v. Novo Nordisk, Inc.*, 2009 WL 2778106, *8 (D.N.J. 2009); *Taskonas v. Nextel Communs., Inc.*, 2006 WL 2527998, *6 (D.N.J. 2006).  Therefore, a supervisor cannot be individually liable on an aiding and abetting theory when taking actions alone.

In an attempt to rebut this proposition, Plaintiff cites to *Ivan v. County of Middlesex* to suggest that one can aid and abet oneself.  612 F.Supp.2d 546 (D.N.J. 2009).  However, *Ivan* stands for the proposition that a supervisor can be held liable when he willfully fails to respond to known LAD violations, which emboldens further acts of discrimination by those he supervises. *Id.* at 553.  *Ivan* does not support Plaintiff's theory that Defendant Mooney aided and abetted his own discriminatory behavior.

Here, Plaintiff alleges no facts that support an aiding and abetting theory of liability.  At best, and taking all inferences in the light most favorable to the non-moving party, Defendant Mooney, acting as Plaintiff's supervisor, issued an order to disarm Plaintiff during the pendency of his mental disability.

18

This action was not discriminatory.  Moreover, Defendant Mooney's direct action did not aid and abet anything and, thus, cannot establish individual aiding and abetting liability under the LAD.[16]  Accordingly, Defendant Mooney's Motion for Summary Judgment on the LAD claim will be granted.

### F.

Finally, Defendant Mooney moves for attorney's fees pursuant to 42 U.S.C. § 1988.  In general, the American system requires each side to bear their own litigation costs.  However, in certain situations Congress has elected to change the general rule by statute.  Section 1988 reads in relevant part, "[i]n any action or proceeding to enforce a provision of . . . § 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988(b).  Although the statute is generally employed by plaintiffs, defendants may also recover attorney's fees if "the plaintiff's action was frivolous, unreasonable, or without foundation."  *See Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011) (quoting *Christiansburg Garment Co. V. EEOC*, 434 U.S. 312, 421 (1978).

In this case, Defendant Mooney is the prevailing party, but

---

[16] For this reason, Plaintiff's allegation that Defendant Mooney refused to appoint Plaintiff to a motorcycle training position cannot establish aiding and abetting liability either.

Plaintiff's claims can hardly be called frivolous.  Indeed, the case involved difficult and novel legal issues.  The Court declines to exercise its discretion to award attorney's fees to Defendant Mooney.  Therefore, Defendant Mooney's Motion with respect to attorney's fees will be denied.

## IV.

District courts should decline to retain jurisdiction absent exceptional circumstances impacting judicial economy, convenience and fairness to litigants.  *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).  Here, a failure to resolve this case immediately could result in a significant waste of state court judicial resources.  Therefore, in furtherance of judicial economy, this Court will resolve the last remaining claim in this case.

Because the Court finds that Defendant Mooney's actions were not discriminatory, and Plaintiff does not allege that Defendant City of Atlantic City independently discriminated against Plaintiff, Defendant City of Atlantic City cannot legally be held liable on Plaintiff's remaining LAD claim based on discrimination.  Accordingly, Plaintiff's remaining LAD claim against Defendant City of Atlantic City will be dismissed with prejudice.

**V.**

For the reasons set forth above, the Court will grant Defendant Mooney's Motion for Summary Judgment.  Defendant Mooney's motion to recover attorney's fees will be denied.  In addition, Plaintiff's remaining state law claim against Defendant City of Atlantic City will be dismissed with prejudice.


Dated: 9/28/2011

　　　　　　　　　　　　　　　　/s/ Joseph E. Irenas　　　　　
　　　　　　　　　　　　　　　　**JOSEPH E. IRENAS, S.U.S.D.J.**